UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                                        :

CHRISTOPHER M. TORNATORE,          :

                       Plaintiff,               :
                                                  :                05 Civ. 6858 (GEL)
              -v-                         :
                                                  :                **OPINION AND ORDER**

JO ANNE B. BARNHART, Commissioner of  :
Social Security,                                 :
                                                  :
                     Defendant.              :
                                                  :
------------------------------------------------------------x

Max D. Leifer and Ira H. Zuckerman, Mark D.
Leifer, P.C., New York, NY, for plaintiff.

Susan D. Baird, Assistant United States Attorney,
for defendant.

GERARD E. LYNCH, District Judge:

       Plaintiff moves for judgment on the pleadings setting aside defendant's determination that he is not "disabled" for purposes of the Social Security Act. Defendant cross-moves for judgment on the pleadings affirming her decision. Defendant's motion will be denied, plaintiff's motion will be granted in part and denied in part, and the decision of the Commissioner will be reversed and remanded for a rehearing pursuant to sentence four of 42 U.S.C. § 405(g)

## BACKGROUND

       Plaintiff Christopher M. Tornatore, a thirty-five year old male with a ninth grade education, worked from 1999 through most of 2002 as a truck loader, warehouse worker, and forklift operator for a wholesale distributor. (Tr. 60, 335.) On August 22, 2002, he suffered a back injury while unloading trucks at work and was taken to the hospital. Plaintiff has not been

employed since that date, because, he claims, he can no longer lift, bend or balance to the extent required for him to work. (Id. at 337.) Examining doctors have found that he suffers from, inter alia, lumbosacral derangement, degenerative disc disease and disc herniations (id. at 15, 248, 251, 267), and plaintiff testified that he experiences severe pain every day in his lower back and legs. (Id. at 338.)

    On September 14, 2002, plaintiff applied for Supplemental Security Income benefits, and on December 16, 2002, he applied for disability insurance benefits. After both applications were denied (id. at 324-27), an Administrative Law Judge ("ALJ") considered the case de novo and found, on January 28, 2005, that plaintiff was not under a disability. (Id. at 13-20.) The ALJ explained that although plaintiff suffered from a severe impairment, his condition was not medically equal to a condition specifically listed in the relevant regulations such that a finding of disability would be required. (Id. at 19.) The ALJ further concluded that although plaintiff could not return to his prior employment, he maintained the "residual functional capacity" to perform a "significant number of jobs in the national economy." (Id. at 19-20.) This decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on June 3, 2005. (Id. at 4-6.) Less than two months later, plaintiff filed a complaint in this Court seeking reversal of the Commissioner's decision. In early 2006, both parties moved for judgment on the pleadings.

## DISCUSSION

I.      General Legal Standards

In order for a claimant to be deemed disabled, he must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A); see Molina v. Barnhart, 04 Civ. 3201 (GEL), 2005 WL 2035959, at *4-*5 (S.D.N.Y. Aug. 17, 2005).

Federal regulations set forth a five-step process for evaluating whether a claimant is disabled under this statutory framework. See 20 C.F.R. §§ 404.1520(a), 416.920(a). As the Second Circuit has explained:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (alterations in original), quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

A claimant denied benefits may appeal a final decision of the Commissioner to the district court, which, pursuant to sentence four of 42 U.S.C. § 405(g), has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[1]  It is not the district court's function, however, "to determine *de novo* whether [a claimant] is disabled."  Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks and emphasis omitted).  A district court may "set aside [the] ALJ's decision only where it is based upon legal error or is not supported by substantial evidence."  Rosa, 168 F.3d at 77 (citation and internal quotation marks omitted); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); Richardson v. Perales, 402 U.S. 389, 401 (1971) (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (citation and internal quotation marks omitted)).

---

[1] Pursuant to sentence six of § 405(g), "the court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).  Sentence-four remands are distinct from sentence-six remands, because only a ruling under sentence four acts as final judgment.  In a sentence-six remand, "the district court retains jurisdiction over the action pending further development and consideration by the ALJ."  Raitport v. Callahan, 183 F.3d 101, 104 (2d Cir. 1999).  The Court relies only on sentence four in the instant case.

As this Court has previously commented, "administrative decisions regarding claimants' eligibility for disability benefits have proven surprisingly vulnerable to judicial reversal," notwithstanding the "apparently deferential standard of review." Molina, 2005 WL 2035959, at *6. "This vulnerability results primarily from [the] Commissioner's creation – and the courts' subsequent enforcement – of various procedural obligations to which ALJs must scrupulously adhere." Id. A failure to adhere to those obligations is a "legal error" warranting reversal of the ALJ's decision. Id. (citation and internal quotation marks omitted); see also Schaal, 134 F.3d at 504 ("'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles,'" quoting Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987)); cf. Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (noting that courts may not "properly affirm an administrative action on grounds different from those considered by the agency").

II.     Errors in the ALJ's Decision

    A. The Treating-Physician Rule and the Duty to Develop the Record

The ALJ committed several legal errors in this case. The first error concerns the treating-physician rule, according to which "[t]he opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." Rosa, 168 F.3d at 78-79; 20 C.F.R. § 404.1527(d)(2). Where an ALJ refuses to give controlling weight to a treating physician's medical opinion, the ALJ must consider various factors to determine how much weight to give to the opinion, including "(i) the frequency of

examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; [and] (iv) whether the opinion is from a specialist." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); see 20 C.F.R. § 404.1527(d)(2).[2]  The regulations also require the Commissioner to provide "good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion."  Id.; accord 20 C.F.R. § 416.927(d)(2); see Halloran, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians [sic] opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").  This requirement facilitates court review of an ALJ's decision and allows claimants to understand better the disposition of their cases.  See id.; Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).

      Here, although the ALJ gave an overview of Dr. Robert Marini's findings and appears to have recognized the doctor as plaintiff's treating physician (Tr. 15-17; see also P. Mem. in Support of Mot. for Judgment on Pleadings at 4, 13; Mem. in Support of Commissioner's Cross-Motion at 4, 17), the ALJ did not acknowledge the treating-physician rule or adequately explain how it applied to this case.  The ALJ's statement that he gave "greater weight to the opinion of the state agency physician" indicated, of course, that the ALJ did not give Dr. Marini's findings controlling weight.  (Tr. 17.)  However, it remains unclear whether, in determining precisely

---

[2]  The ALJ must also consider "other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion."  Hallaron, 362 F.3d at 32.

what weight to give Dr. Marini's opinion, the ALJ considered such factors as "the frequency of examination," the "length, nature and extent of the treatment relationship," and the fact that Dr. Marini is a specialist. 20 C.F.R. § 404.1527(d)(2). It can hardly be claimed, therefore, that the ALJ has complied with the regulations and case law requiring him to "comprehensively set forth reasons for the weight assigned" to Dr. Marini's opinion. Halloran, 362 F.3d at 33; see 20 C.F.R. § 404.1527(d)(2).

To the extent the ALJ gave any reasons for discounting the weight of Dr. Marini's conclusions, the reasons are insufficient. The ALJ noted, for example, that Dr. Marini's statement that plaintiff was "totally disabled from his current employment" suggested the possibility that plaintiff could perform other, less strenuous work. (Tr. 17.) The ALJ also observed that "Dr. Marini's opinion does not address any specific functional limitations." (Id.) An ALJ, however, may not rely merely on the *absence* of evidence in reaching his decision "without making an affirmative effort to fill any gaps in the record." Garcia v. Barnhart, 01 Civ. 8300 (GEL), 2003 WL 68040, *3 (S.D.N.Y. Jan. 7, 2003). Rather, an ALJ confronted with an incomplete record must seek out additional information sua sponte, "even where the claimant is represented by counsel." Rosa, 168 F.3d at 79 (citations and internal quotation marks omitted); see also Schaal, 134 F.3d at 505 ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte*."); Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record. This duty exists even when the claimant is represented by counsel . . . ."); Rivas v. Barnhart, 01 Civ. 3672 (RWS), 2005 WL 183139, at *23 (S.D.N.Y. Jan. 27, 2005)

("[A]n ALJ has an affirmative duty to seek amplification of an otherwise favorable treating physician report where the report is believed to be insufficiently explained or lacking in support."); Volkerts v. Soc. Sec. Admin., 03 Civ. 1471 (CFD) (TPS), 2005 WL 2660433, at *3 (D. Conn. Sept. 29, 2003) ("[T]he ALJ must point to affirmative pieces of evidence, not simply the absence of evidence, to support his determination."); Devora v. Barnhart, 205 F. Supp. 2d 164, 172-73 (S.D.N.Y. 2002) ("The duty of the ALJ to develop the record is particularly important when it comes to obtaining information from a claimant's treating physician."); Hartnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998) ("[I]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly."). Dr. Marini did not offer an opinion about plaintiff's fitness for any tasks other than those associated with his prior work.[3] The absence of an opinion about specific functions or limitations is a gap to be filled, not a reason to discredit or disregard Dr. Marini's opinion. Because the ALJ relied on ambiguities and omissions without seeking clarification or amplification of the record, he did not satisfy his obligations.

---

[3] The ALJ stated that Dr. Marini "would not preclude the claimant from performing any employment, only the heavy position he performed at the time of his injury." (Tr. 17.) The phrase "would not preclude" might be taken to suggest that Dr. Marini affirmatively stated that plaintiff could engage in employment that was less strenuous than his prior job. However, the ALJ opinion does not cite – and the Court has not found – any affirmative statement to that effect in the record. Though a New York State Workers' Compensation Board form filled out by Dr. Marini asked whether plaintiff could "do any type of work," Dr. Marini did not provide an answer. (Id. at 257.) Defendant concedes in her brief, moreover, that it "may be true" that "Dr. Marini's opinion that plaintiff 'was totally disabled from his current employment' [did] not rule out the possibility that plaintiff was disabled from all employment." (Mem. in Support of Commissioner's Cross-Motion at 17 (citation omitted).)

The ALJ also noted that Dr. Marini's conclusions regarding plaintiff's ability to work would not be conclusive even if they had favored plaintiff, because "opinions regarding a claimant's ability to work are administrative findings . . . reserved to the Commissioner." (Tr. 17.) In support of this proposition, the ALJ relied on a social security ruling that certain determinations by doctors are "never entitled to controlling weight or special significance." Soc. Sec. Ruling ("SSR") 96-5p, 1996 WL 374183, at *2 (July 2, 1996). For example, it is for the Commissioner, and not for any doctor, to make the ultimate determination as to "[w]hether an individual's [residual functional capacity] prevents him or her from doing past relevant work," or whether an individual is "disabled" for purposes of the Social Security Act. Id. The ALJ relies on doctors, in contrast, to determine a claimant's "symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Id., quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).[4]

There are at least two problems with the ALJ's reliance on SSR 96-5p. One, though the ruling attempts to distinguish sharply between determinations to be made by doctors and those to be made by the Commissioner, it also explains "that adjudicators must always carefully consider medical source opinions about any issue, *including opinions about issues that are reserved to the Commissioner*." SSR 96-5p, 1996 WL 374183, at *2 (emphasis added). In the case of treating physicians, moreover, the adjudicator "must make every reasonable effort to recontact [the physican] for clarification when [he] provide[s] opinions on issues reserved to the Commissioner and the bases for such opinions are not clear." Id. The ruling adds that "opinions from any

---

[4] Social security rulings "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1).

medical source on issues reserved to the Commissioner must never be ignored." Id. at *3. Thus, to the extent the ALJ in the instant case disregarded Dr. Marini's views on whether plaintiff is disabled, the ALJ erred.

The ALJ's reference to SSR 96-5p is also problematic to the extent it suggests that determinations regarding plaintiff's specific physical limitations are not medical questions. As noted above, the ALJ commented that "Dr. Marini's opinion does not address any specific functional limitations," and then claimed that "[r]egardless" of what the doctor's view might be on such matters, those questions were "reserved to the Commissioner." (Tr. 17). To the extent the ALJ only meant to suggest that a claimant's ability to engage in a particular occupation is ultimately to be determined by the Commissioner, the ALJ accurately stated the law. The ALJ opinion could also reasonably be read, however, as suggesting more generally that questions regarding the physical ability to engage in particular activities is not a medical question. The latter conclusion would be erroneous in view of regulations providing that "what [a claimant] can still do despite impairment(s)" is a medical question, as are questions regarding "physical . . . restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

B.  The ALJ's Unexplained Reliance on the SSA-831 Form

At step three of the evaluation process, the ALJ noted, without citation, that the "signatures of state agency medical consultants on Form SSA-831 is implicit recognition that these experts have considered and ruled out a finding" that plaintiff's condition met or was medically equal to an impairment in Appendix I of the regulations. (Tr. 15.) The ALJ did not elaborate on the form's content or explain what he meant by "implicit recognition." While there is authority for the proposition that a physician's signature on an "SSA-831-U5" form "ensures

that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence," SSR 96-6P, 1996 WL 374180, at *3 (July 2, 1996), the Court has found no authority supporting the conclusion that a physician's signature on the form constitutes "implicit recognition" that medical equivalence has been "ruled out." (Tr. 15.)

In any event, the Court has located only one SSA-831 form in the record (id. at 323), and it is an SSA-831-*U3* form, which may be different from the SSA-831-U5 form referred to in the social security ruling cited above. Moreover, the form in the record is signed by a "disability examiner," not a "medical consultant[]." (Id. at 323.) See 20 C.F.R. § 404.1615 (distinguishing "disability examiner[s]" from "medical and psychological consultant[s]" and providing that disability examiners may make disability determinations without a medical or psychological consultant only where "there is no medical evidence to be evaluated"); id. § 404.1616 (defining "medical consultant"); see also § 416.920a(e)(1) (distinguishing "disability examiner[s]" from "medical and psychological consultant[s]"); id. § 416.1015(c)(1) (same). This Court cannot evaluate whether the ALJ's conclusion is supported by substantial evidence if the evidence to which the ALJ opinion refers is not in the record.

### C. Plaintiff's Allegations of Pain

The ALJ also erred by failing to explain sufficiently his finding that plaintiff's "testimony regarding his pain and limitations [was] not entirely credible in light of the medical evidence of record." (Tr. 16.) Certainly, the ALJ was entitled — and obligated — to make a finding about plaintiff's credibility. See SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996) ("When the existence of a medically determinable physical . . . impairment(s) that could

reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated . . . . This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects."). And there is no question that an ALJ must consider allegations of pain in light of the medical evidence of record. See id. at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

In explaining the credibility assessment, however, the ALJ's opinion "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id. at *4; see Mason v. Barnhart, 05 Civ. 8421 (DLC), 2006 WL 3497761, at *4 (S.D.N.Y. Dec. 5, 2006). The ALJ's opinion does not meet that standard. Though the opinion indicates that the ALJ found inconsistencies between plaintiff's description of his *limitations* and the findings of a state agency physician regarding those limitations, it is not clear on what basis the ALJ rested his conclusion that the allegations of *pain* were not credible. (Tr. 16.) Indeed, the only evidence of pain discussed by the ALJ *supports* plaintiff's allegations; the ALJ opinion acknowledges that Dr. Marini treated plaintiff for back pain by administering selective nerve root blocks, and further acknowledges that there was no evidence from notes taken during plaintiff's physical therapy sessions that the nerve blocks had provided plaintiff with any relief. (Tr. 15.)

The ALJ also failed to comply with 20 C.F.R. § 416.929(c), which requires an ALJ assessing the credibility of a claimant's allegations of pain to consider, inter alia, the claimant's

"daily activities"; the "location, duration, frequency, and intensity of [the individual's] pain or other symptoms"; and the "type, dosage, effectiveness and side effects of any medication [the individual] take[s] or ha[s] taken to alleviate . . . pain or other symptoms." 20 C.F.R. § 416.929(c); see Butler v. Barnhart, 353 F.3d 992, 1004 (D.C. Cir. 2004); Van Dien v. Barnhart, 04 Civ. 7259 (PKC), 2006 WL 785281, *12 (S.D.N.Y. Mar. 24, 2006). Though plaintiff testified as to several such factors (see, e.g., Tr. 337-39, 342-44, 346-47), the ALJ's opinion does not appear to have taken them into account. Particularly surprising is the ALJ's failure to mention that plaintiff regularly takes Valium and Vicodin (id. 299-302, 206, 342), and that he has received prescriptions for Vicoprofen, Percocet, Ambien, Duragesic, Skelaxan, Tylenol #3, Celebrex, Flexeril, and Zanaflex. (Id. at 123, 232, 299-315.)

## CONCLUSION

Because the ALJ did not fully meet his obligations with respect to, inter alia, the treating-physician rule, the duty to develop the record, and the assessment of allegations of pain, his decision is based on legal error and must be set aside. Accordingly, defendant's motion for judgment on the pleadings is denied, plaintiff's motion for judgment on the pleadings is granted in part and denied in part, the decision of the Commissioner is reversed pursuant to section four of 42 U.S.C. § 405(g), and the case is remanded for a rehearing consistent with this opinion.[5]

---

[5] In support of his motion, plaintiff attaches a report written by Dr. Richard J. Radna, which describes surgical procedures performed on plaintiff in July 2005. Though the parties dispute whether the Court may consider this information in deciding whether to remand, that issue is moot; regardless of whether the Court considers the new evidence, a remand would be warranted for reasons explained above.

Though the issue of whether the 2005 evidence may be considered by *this* Court is moot, there may be a live issue on remand with respect to whether the *ALJ* can or should take the 2005 evidence into account. Compare, e.g., Jackson v. Chater, 99 F.3d 1086, 1093 (11th Cir. 1996) (suggesting, without deciding, that 42 U.S.C. § 405(g) requires claimants wishing to bring new

SO ORDERED.

Dated: New York, New York
       December 12, 2006

                                                  GERARD E. LYNCH
                                                  United States District Judge

---

evidence before an ALJ after a sentence-four remand to satisfy the materiality and good-cause requirements applicable to sentence-six remands), with Seavey v. Barnhart, 276 F.3d 1, 12-13 (1st Cir. 2001) (remanding under sentence four of § 405(g); holding that the "good cause" requirement for new evidence applies only to sentence-six remands; and leaving the question of how to weigh new evidence on remand to the ALJ). The parties, however, have not addressed that issue, nor is resolution of the issue necessary to this Court's decision. Accordingly, the Court expresses no view on the matter and leaves the issue to the Commissioner to address in the first instance on remand.